UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SETURNINO VARGAS, | ) | 1:06-cv-001148-LJO-SMS |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATION RE: |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (Doc. 1) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (Act) and supplemental security income (SSI) pursuant to Title XVI of the Act. Plaintiff is represented by counsel. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.§ 636(b) and Local Rule 72-302(c)(15).

I. Procedural History

In June 2001, Plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI), alleging

disability since November 1, 1995, primarily based on arthritis and diabetes mellitus. (A.R. 3,[1] 23, 90-92.) After Plaintiff's claim was denied initially and on reconsideration, and after a hearing before an administrative law judge (ALJ) on October 7, 2002, a partially unfavorable decision issued on December 18, 2002, in which it was determined that Plaintiff was disabled as of January 28, 2002, but not before that date. (A.R. 57-61, 62-65, 68-71.) The Appeals Council remanded the matter for a new hearing and decision with directions to obtain updated records from Plaintiff's treating sources, to obtain an orthopedic consultative examination if necessary, to evaluate medical records, to evaluate Plaintiff's credibility in light of the additional evidence, and to inquire of a vocational expert (VE) whether the VE's testimony was consistent with the Dictionary of Occupational Titles. (A.R. 81-83.)

On February 3, 2005, a hearing was held before the Honorable James P. Berry. (A.R. 23.) Plaintiff appeared with an attorney and testified in the presence of an interpreter. (A.R. 23.) On April 6, 2005, the ALJ partially denied Plaintiff's application for benefits, concluding that although Plaintiff could perform a broad range of medium work from November 1995 to October 14, 2001, including his past relevant work as a farm laborer, as of October 14, 2001, Plaintiff could not perform his past relevant medium work, and thus he was disabled as of that date and thereafter. (A.R. 23-28.) After the Appeals Council denied Plaintiff's request for review on June 8, 2006 (A.R. 6-8),

---

[1] The administrative transcript's index indicates that the application for SSI was not available for inclusion. (A.R. 4.)

1  Plaintiff filed the complaint in this action on August 19, 2006.

2  Briefing commenced on May 3, 2007, with the filing of Plaintiff's

3  opening brief, and was completed on June 15, 2007, when Defendant

4  filed a brief in opposition.

5      II. <u>Standard and Scope of Review</u>

6      Congress has provided a limited scope of judicial review of

7  the Commissioner's decision to deny benefits under the Act. In

8  reviewing findings of fact with respect to such determinations,

9  the Court must determine whether the decision of the Commissioner

10 is supported by substantial evidence. 42 U.S.C. § 405(g).

11 Substantial evidence means "more than a mere scintilla,"

12 <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a

13 preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

14 (9th Cir. 1975). It is "such relevant evidence as a reasonable

15 mind might accept as adequate to support a conclusion."

16 <u>Richardson</u>, 402 U.S. at 401. The Court must consider the record

17 as a whole, weighing both the evidence that supports and the

18 evidence that detracts from the Commissioner's conclusion; it may

19 not simply isolate a portion of evidence that supports the

20 decision. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir.

21 2006); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  It

22 is immaterial that the evidence would support a finding contrary

23 to that reached by the Commissioner; the determination of the

24 Commissioner as to a factual matter will stand if supported by

25 substantial evidence because it is the Commissioner's job, and

26 not the Court's, to resolve conflicts in the evidence. <u>Sorenson</u>

27 <u>v. Weinberger</u>, 514 F.2d 1112, 1119 (9th Cir. 1975).

28      In weighing the evidence and making findings, the

3

1  Commissioner must apply the proper legal standards. Burkhart v.

2  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

3  review the whole record and uphold the Commissioner's

4  determination that the claimant is not disabled if the

5  Commissioner applied the proper legal standards, and if the

6  Commissioner's findings are supported by substantial evidence.

7  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

8  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

9  the Court concludes that the ALJ did not use the proper legal

10 standard, the matter will be remanded to permit application of

11 the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

12 Cir. 1987).

13      III. Disability

14      In order to qualify for benefits, a claimant must establish

15 that she is unable to engage in substantial gainful activity due

16 to a medically determinable physical or mental impairment which

17 has lasted or can be expected to last for a continuous period of

18 not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

19 A claimant must demonstrate a physical or mental impairment of

20 such severity that the claimant is not only unable to do the

21 claimant's previous work, but cannot, considering age, education,

22 and work experience, engage in any other kind of substantial

23 gainful work which exists in the national economy. 42 U.S.C.

24 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

25 Cir. 1989). The burden of establishing a disability is initially

26 on the claimant, who must prove that the claimant is unable to

27 return to his or her former type of work; the burden then shifts

28 to the Commissioner to identify other jobs that the claimant is

4

capable of performing considering the claimant's residual
functional capacity, as well as her age, education and last
fifteen years of work experience. Terry v. Sullivan, 903 F.2d
1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific
sequential determinations in the process of evaluating a
disability: 1) whether the applicant engaged in substantial
gainful activity since the alleged date of the onset of the
impairment, 20 C.F.R. § 404.1520 (2005);[2] 2) whether solely on the
basis of the medical evidence the claimed impairment is severe,
that is, of a magnitude sufficient to limit significantly the
individual's physical or mental ability to do basic work
activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the
basis of medical evidence the impairment equals or exceeds in
severity certain impairments described in Appendix I of the
regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant
has sufficient residual functional capacity, defined as what an
individual can still do despite limitations, to perform the
applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and
5) whether on the basis of the applicant's age, education, work
experience, and residual functional capacity, the applicant can
perform any other gainful and substantial work within the
economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is
essentially the same. See 20 C.F.R. § 416.920.

Here, the ALJ concluded that Plaintiff, who was fifty-five

---

[2] All references are to the 2005 version of the Code of Federal Regulations unless otherwise noted.

1 years old at the time of decision with no formal education and an
2 inability to communicate in English, and who had past relevant
3 work as a farm laborer, had severe impairments of diabetes
4 mellitus and arthritis that did not meet or equal a listed
5 impairment; Plaintiff could perform a broad range of medium work
6 from November 1995 to October 14, 2001, including his past
7 relevant work as a farm laborer; as of October 14, 2001,
8 Plaintiff could not perform his past relevant medium work, and
9 thus he was disabled as of that date and thereafter. (A.R. 23-
10 28.)

11      IV. <u>Plaintiff's Subjective Complaints</u>

12      Plaintiff argues that the ALJ inadequately reviewed
13 Plaintiff's subjective complaints and failed to state specific,
14 convincing reasons for rejecting Plaintiff's subjective
15 statements. Without specification of precise defects, Plaintiff
16 argues that the ALJ failed to consider all relevant criteria and
17 misstated unspecified testimony. (Brief. p. 6.)

18      The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir.
19 2007), summarized the pertinent standards for evaluating the
20 sufficiency of an ALJ's reasoning in rejecting a claimant's
21 subjective complaints:

22          An ALJ is not "required to believe every
           allegation of disabling pain" or other non-exertional
23      impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th
           Cir.1989). However, to discredit a claimant's testimony
24      when a medical impairment has been established, the ALJ
           must provide " 'specific, cogent reasons for the
25      disbelief.' " <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>,
           81 F.3d at 834). The ALJ must "cit[e] the reasons why
26      the [claimant's] testimony is unpersuasive." <u>Id.</u> Where,
           as here, the ALJ did not find "affirmative evidence"
27      that the claimant was a malingerer, those "reasons for
           rejecting the claimant's testimony must be clear and
28      convincing." <u>Id.</u>

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. See S.S.R. 02-1p (Cum. Ed.2002), available at Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R. 96-7p (Cum. Ed.1996), available at 61 Fed.Reg. 34,483-01 (July 2, 1996). An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. See 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); see Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Fair, 885 F.2d at 603; see also Thomas, 278 F.3d at 958-59.

The factors to be considered in weighing credibility are set forth in the regulations and pertinent Social Security rulings. They include the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929; S.S.R. 96-7p.

With respect to the course of analysis directed by the

regulations, the ALJ is first obligated to consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Once it is determined that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine how the symptoms limit the capacity for work. §§ 404.1529(b), (c); 416.929(b), (c). The ALJ will consider all available evidence. To the extent that the claimant's symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, the symptoms will be determined to diminish the claimant's capacity for basic work activities. §§ 404.1529(c)(4); 416.929(c)(4). A claimant's statements will not be rejected solely because unsubstantiated by the available objective medical evidence. §§ 404.1529(c)(2); 416.929(c)(2).

Further, the pertinent Social Security Ruling provides in pertinent part that an ALJ has an obligation to articulate the reasons supporting the analysis:

> ...When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the

regulations for evaluating symptoms. The determination
or decision must contain specific reasons for the
finding on credibility, supported by the evidence in
the case record, and must be sufficiently specific to
make clear to the individual and to any subsequent
reviewers the weight the adjudicator gave to the
individual's statements and the reasons for that
weight. This documentation is necessary in order to
give the individual a full and fair review of his or
her claim, and in order to ensure a well-reasoned
determination or decision.

S.S.R. 96-7p at 4.

Here, the ALJ noted Plaintiff's testimony, including his complaint that he quit work in 1995 because of pain, which had improved somewhat in all his joints but remained in his bilateral ankles, elbows, and shoulders; he experienced stiffness in the hand and wrist; his blood sugar levels were better, but he had blurred vision for an hour or two daily and low energy; and he had to use a cane four days a week, could lift ten pounds, stand three hours, and sit one to two hours. (A.R. 25-26.)

The ALJ expressly concluded that Plaintiff's subjective complaints before October 14, 2001, were not entirely consistent with the medical evidence because there were significant gaps in treatment; however, after that date, consistent objective medical evidence established the presence of impairments that could reasonably be expected to produce the symptoms and limitations alleged. Thus, Plaintiff's subjective complaints had been given substantial weight in evaluating his RFC along with the findings of Dr. Chang, a consultative examiner. (A.R. 26.) The ALJ had considered the medical opinions and stated that he gave greater weight to Dr. Chang's opinion of a light RFC than to the state agency physicians' assessment of a more medium work capacity because of the additional findings of Dr. Chang. (A.R. 26.) The

1  ALJ also referred to Dr. Lugo's assessments of Plaintiff's

2  disability, which in April and June 2001 were for temporary

3  disability only (two months in April, and two months in June),

4  and which did not indicate preclusion from all work activity or

5  specify any work-related limitations or any medical evidence to

6  support any limitation. (A.R. 24.) The ALJ rejected the opinion

7  of consulting examiner Dr. Gonzales, whose examination of

8  Plaintiff in August 2001 revealed only some discomfort with

9  ambulation and mild tenderness to palpation of the knees, and

10 some decreased handgrip and shoulder strength, and decreased

11 elbow, wrist, hip, and knee flexion and extension, but an absence

12 of joint effusions or joint deformities; the ALJ stated that Dr.

13 Gonzales' assessment of capacity to lift or carry ten pounds,

14 stand and walk two hours, and sit six hours, with occasional

15 bending, stooping, and crouching was overly restrictive because

16 the examination did not reveal any significant physical

17 limitations. (A.R. 25.) The ALJ noted that Dr. Gonzales relied

18 mostly on Plaintiff's subjective complaints. (Id.)

19     Contrary to Plaintiff's assertion, the ALJ's summary of

20 Plaintiff's testimony concerning his subjective complaints,

21 although not completely accurate,[3] was essentially fair and

22 correct. (A.R. 25-26, 299-306.)

23     Likewise, the ALJ expressly stated reasons. He discounted

24 Plaintiff's subjective complaints during the time before October

25 _____

26  [3] Plaintiff complained of pain in all his joints; he testified he could stand and walk longer than thirty minutes

27 each, with the longest standing time being an hour or forty minutes, or an hour and one-half, with an ability to walk longer yet with difficulty; he had to rest his hands after using them for about fifteen minutes; his blurry vision lasted about an hour or sometimes less, but happened almost every day; he could walk about four hundred meters; he could

28 lift about fourteen pounds but did not know how much weight he could carry; he could sit an hour or so; his medications helped him, but he had no side-effects. (A.R. 299, 300-302, 304-06.)

14, 2001, because they were inconsistent with the medical record of treatment, and because they were inconsistent with the medical experts' opinions as to the extent of Plaintiff's functional capacities and limitations. (A.R. 26.)

It is established that in rejecting subjective complaints, it is permissible to rely upon opinions of physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). Included in the factors that an ALJ may consider in weighing a claimant's credibility are the claimant's reputation for truthfulness; inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, or work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ may consider whether the Plaintiff's testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999). Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir. 1999). It is appropriate for an ALJ to draw an inference that Plaintiff did not have ongoing pain based on a general lack of medical care between two periods of treatment. Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995) (gap between two

surgeries).

Substantial evidence supported the ALJ's finding that there was a gap in treatment before the date on which disability was found to commence. Plaintiff does not dispute that there was no evidence of any significant treatment after October 26, 1996, until approximately April 2001. As the ALJ detailed in the decision (A.R. 24-26), Plaintiff's left knee was injured in November 1995; x-rays showed only very minimal degenerative changes with probable internal derangement; it was diagnosed as effusion and treated conservatively with Naprosyn, home exercise, and a knee support, and it improved with Prednisone in February 1996. (A.R. 25, 223, 192-93, 281.) Further, Plaintiff was diagnosed with diabetes mellitus in December 1995, but it was under good control. (A.R. 223.) Plaintiff's arthritis clinically improved and was stable according to progress notes in 1996. (A.R. 252-53, 275, 277.)

In December 1995, Dr. Smith granted Plaintiff disability first only to December 11, 1995, and then again only to January 15, 1996, and he did not state any functional limitations or restrictions pertinent to Plaintiff. (A.R. 186, 179.)

In April 2001, Dr. Lugo noted that Plaintiff wanted disability to be sent to SSI, but Dr. Lugo extended Plaintiff's disability for two months only. (A.R. 126.) Plaintiff suffered poor diabetes control in May 2001, and medicine compliance was noted as part of the plan. (A.R. 125.) In June 2001, Plaintiff's general relief disability was extended only two months. (A.R. 122.) There were no work-related or other limitations placed on Plaintiff in connection with the extensions of temporary

12

disability.

Further, in August 2001, Dr. Gilbert Gonzales, Jr., performed a comprehensive internal medical evaluation and found some discomfort with ambulation, mild tenderness to palpation on the medial aspect of the knees, but no joint effusions or deformities; Plaintiff had decreased hand grip and shoulder strength at 4/5 and decreased elbow, wrist, hip, and knee flexion and extension; the sensory exam was within normal limits, and reflexes were +2 in the bilateral upper and lower extremities. Although Dr. Gonzales limited Plaintiff's RFC, the record supports the ALJ's conclusion that the examination did not reveal any significant physical limitations. (A.R. 129-33.)

The ALJ also detailed the evidence in September and November 2001, and thereafter, revealing increased pain in the knee, leg, and shoulder; worsening lower extremity weakness in 2002 and poor control of diabetes in December 2003; and Dr. Chang's orthopedic consultative examination in September 2003, which included findings of decreased range of motion in the cervical and lumbar spine, crepitus at the bilateral knees, tenderness to palpation in multiple aspects of the knees and bilateral shoulders, decreased grip and muscle strength of the hands, shoulders, and elbows, with an RFC for essentially light work assessed with some postural and manipulative limitations. (A.R. 25, 232-35.)

The Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain to the extent alleged for the pertinent period, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the

1 ALJ rejected the claimant's testimony on permissible grounds and
2 did not arbitrarily discredit Plaintiff's testimony.

3   V. <u>Severity of Impairment</u>

4   Plaintiff argues that the ALJ erred in not finding that
5 Plaintiff's left knee internal derangement was severe between
6 December 31, 1999 (the date Plaintiff was last insured) and
7 October 2001 because the evidence reflected that Plaintiff had
8 knee effusion, tenderness, and a need for a knee support. (A.R.
9 189-92.) Further, the ALJ erred in ignoring Plaintiff's obesity
10 and not finding that it was severe. (A.R. 130.) Finally, the ALJ
11 should have attempted to re-contact the treating physician to
12 clarify an opinion regarding disability.

13   With respect to Plaintiff's knee condition, the records
14 noted by Plaintiff are from Dr. Larsen at Valley Family Health
15 Center from November 1995, and Dr. Smith in December 1995. (A.R.
16 182-93.) The records are only partially legible; the copies
17 affirmatively indicate that they are the best copies possible.
18 Dr. Smith in December found mild tenderness, full extension, and
19 only some limits of flexion; an MRI was ordered. (A.R. 187.) Dr.
20 Smith put Plaintiff on disability for one week in early December
21 1995 with medication and an elastic knee brace; disability was
22 extended for one month until January 15, 1996. (A.R. 179, 186.)
23 Plaintiff was suffering increasing pain; there was an effusion.
24 (A.R. 186.)

25   At step two, the Secretary considers if claimant has "an
26 impairment or combination of impairments which significantly
27 limits his physical or mental ability to do basic work
28 activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This is

referred to as the "severity" requirement and does not involve consideration of the claimant's age, education, or work experience. Id. The step-two inquiry is a de minimis screening device to dispose of groundless claims. Bowen v. Yuckert, 482 U.S. 153-54 (1987). The Secretary is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient medical] severity." 42 U.S.C. § 1382c(a)(3)(F).

Basic work activities include the abilities and aptitudes necessary to do most jobs, such as physical functions of walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

An impairment or combination thereof is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec. Ruling 85-28; Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

The evidence on which Plaintiff relies tends to show some limitation of function for a short period of time during which

1 Plaintiff was considered temporarily disabled by his treating

2 physicians, but the extent of the apparently temporary

3 dysfunction was unclear because the treating sources did not

4 assign specific functional limitations to the Plaintiff at that

5 time or make any reference to specific clinical findings or tests

6 that supported any precise limitations. To the extent that

7 evidence is inconsistent, conflicting, or ambiguous, it is the

8 responsibility of the ALJ to resolve any conflicts and ambiguity.

9 Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Because

10 the ALJ has authority to interpret ambiguous medical opinions and

11 to resolve conflicts, Matthews v. Shalala, 10 F.3d 678, 680 (9th

12 Cir. 1993), the Court must defer to the ALJ's decision.

13     Here, the ALJ took a longitudinal view of Plaintiff's

14 overall treatment, which reflected a gap of about five years with

15 respect to treatment or any restriction due to Plaintiff's

16 condition. Further, the ALJ considered the development of

17 Plaintiff's knee symptoms and reasonably inferred, based on more

18 complete and comprehensive data and expert opinions, that

19 Plaintiff's condition worsened towards the end of 2001, and at

20 that point Plaintiff's RFC changed. It is established that a more

21 recent opinion may be entitled to greater deference than an older

22 opinion, as may an opinion which describes or considers more

23 significant medical events or conditions. Orn v. Astrue, 495 F.3d

24 625, 633-34 (9th Cir. 2007). Regulations provide that generally

25 more weight is given by the Social Security Administration (SSA)

26 to opinions from treating sources because they are likely to be

27 most able to provide a detailed, longitudinal picture of a

28 claimant's medical impairments and may bring a unique perspective

to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Although the ALJ here relied on sources other than treating physicians, he appropriately evaluated the expert opinions concerning Plaintiff's capacities over an extended period of time. Although Plaintiff used a brace and took medications, the evidence supported the ALJ's implicit conclusion that any knee effusion was of limited duration and not severe.

With respect to Plaintiff's claim that the ALJ ignored Plaintiff's obesity, Plaintiff points to Dr. Gonzales' consultative comprehensive internal medicine examination of August 2001, where Dr. Gonzales stated that Plaintiff, who weighed 171 pounds and was five feet four inches in height, was overweight but in no acute distress. (A.R. 130.) The limitations addressed by Dr. Gonzales were Plaintiff's slight weakness of the extremities, difficulty with ambulation and standing or walking, and his use of a cane, which Dr. Gonzales opined affected his ability to stand, walk, lift and carry, and take certain postures, although the physical examination was essentially normal. (A.R. 132.) Plaintiff does not point to any evidence of any functional limitations having been assigned to Plaintiff as a result of his being overweight. Further, the ALJ considered all the pertinent expert opinions concerning Plaintiff's limitations and appropriately evaluated them and explained the weight he put on them; the ALJ relied on additional findings and opinions in rejecting Dr. Gonzales' more restrictive RFC.

The present case in not one in which the ALJ overlooked any limitations of function discretely attributed to obesity. This case is unlike Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), in which it was held that the ALJ erred in not considering obesity. Here, in contrast, Plaintiff had counsel at the hearing and throughout the administrative and judicial process; there is no evidence that Plaintiff's weight was close to listing criteria; and Plaintiff had the opportunity to obtain evaluation and treatment from multiple sources who considered Plaintiff's total physical condition and opined concerning the accompanying functional limitations, so there was no need to develop the record. The record does not reflect functional limitations as a result of Plaintiff's weight, and Plaintiff has not presented such evidence or attempted to establish equivalence to a listing. Under such circumstances, it is not reversible error not to consider obesity at step two of the sequential analysis. Burch v. Barnhart, 400 F.3d 676, 682-84 (9th Cir. 2005). In addition, there is no error at step three where, as here, there is no evidence that Plaintiff's weight condition met or medically equaled the pertinent listing, and further, Plaintiff does not propound a theory as to how the impairments combined to equal a listing. Id. at 682-83. Finally, there is no error at step five where the ALJ considers all the pertinent evidence regarding Plaintiff's functional limitations and formulates Plaintiff's RFC pursuant to the correct legal framework. Burch v. Barnhart, 400 F.3d at 683-84.

Accordingly, the Court concludes that the ALJ did not err with respect to severity findings concerning Plaintiff's knee or

weight conditions.

Further, with respect to Plaintiff's contention that it was necessary for the ALJ to re-contact the treating physician, an ALJ is required to re-contact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. §§ 404.1512(e), 416.912(e); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ, with support in the record, proceeded to determine Plaintiff's disability status and implicitly found the evidence adequate to make a determination regarding Plaintiff's disability. The Court accordingly concludes that the ALJ did not have a duty to re-contact Plaintiff's treating physician to clarify the earlier disability opinions.

VI. Plaintiff's RFC

Plaintiff argues that the RFC assigned to Plaintiff by the ALJ was not supported by substantial evidence; the ALJ did not review the evidence that was favorable to Plaintiff.

Social Security regulations define residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (citing 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c) and Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995)). The Commissioner must evaluate the claimant's "ability to work on a sustained basis." Id. (citing 20 C.F.R. § 404.1512(a)); Lester, 81 F.3d at 833); see 20 C.F.R. § 416.945. A "regular and continuing basis" means eight hours a day, five days a week, or an equivalent work schedule. S.S.R. 96-8p at 1, 2. The process

1  involves an assessment of physical abilities and then of the
2  nature and extent of physical limitations with respect to the
3  ability to engage in work activity on a regular and continuing
4  basis. 20 C.F.R. § 404.1545(b). In assessing a claimant's RFC, it
5  is necessary to consider the limiting effects of all the
6  claimants impairments, even those that are not severe. 20 C.F.R.
7  § 404.1545(a), (e); 20 C.F.R. § 416.945(a), (e); Soc. Sec. Ruling
8  96-8p at 4; Reddick v. Chater, 157 F. 3d 715, 724 (9th Cir. 1998)
9  (failure to consider non-exertional factor of fatigue that could
10 affect stamina); Beecher v. Heckler, 756 F.2d 693, 694-95 (9th
11 Cir. 1985) (failure to consider a psychiatrist's report regarding
12 a mental impairment). The ALJ must consider all factors that
13 might have a significant impact on an individual's ability to
14 work, including the side effects of medications as well as
15 subjective evidence of pain; it is improper to focus on a single
16 disease when other significant conditions exist. Varney v.
17 Secretary of HHS, 846 F.2d 581, 585 (9th Cir.), relief modified,
18 859 F.2d 1396 (1988).

19      The pertinent standards for evaluation of expert medical
20 opinions have been recently summarized:

21          The opinions of treating doctors should be given
            more weight than the opinions of doctors who do not
22          treat the claimant. Lester [v. Chater, 81 F.3d 821, 830
            (9th Cir.1995) (as amended).] Where the treating
23          doctor's opinion is not contradicted by another doctor,
            it may be rejected only for "clear and convincing"
24          reasons supported by substantial evidence in the
            record. Id. (internal quotation marks omitted). Even
25          if the treating doctor's opinion is contradicted by another
            doctor, the ALJ may not reject this opinion without
26          providing "specific and legitimate reasons" supported by
            substantial evidence in the record. Id. at 830, quoting
27          Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).
            This can be done by setting out a detailed and thorough
28          summary of the facts and conflicting clinical evidence,

20

1   stating his interpretation thereof, and making findings.
2   Magallanes [v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).]
    The ALJ must do more than offer his conclusions. He must
3   set forth his own interpretations and explain why they,
    rather than the doctors', are correct. Embrey v. Bowen, 849
4   F.2d 418, 421-22 (9th Cir.1988).

5   Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
    accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
6   830-31.

7   Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

8       Here, the ALJ explained his reasoning in concluding that

9   Plaintiff had a RFC for essentially medium work until October 14,

10  2001. (A.R. 25, 27.)

11      The ALJ considered Dr. Lugo's granting two-month periods of

12  temporary disability to Plaintiff in April and June 2001, and he

13  further considered Plaintiff's diabetes having been in poor

14  control with a need for Plaintiff to take diabetic medication

15  consistently. (A.R. 24.) The ALJ reasonably interpreted the

16  records as reflecting temporary disability only; further,

17  substantial evidence supports the ALJ's finding that Dr. Lugo did

18  not indicate a permanent, total work disability and did not

19  specify work-related limitations or any medical evidence to

20  support such limitations. (A.R. 24, 122-26.) These factors are

21  appropriately considered and constitute specific and legitimate

22  reasons. An ALJ may reject a treating physician's opinion that is

23  brief and conclusionary in form with little in the way of

24  clinical findings to support its conclusion. Magallanes v. Bowen,

25  881 F.2d 747, 751 (9th Cir. 1989). Further, the ultimate question

26  of whether or not a claimant is disabled is entrusted to the ALJ,

27  who need not accept a medical opinion on such an issue.

28  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Finally,

1  the ALJ is entitled to draw inferences logically flowing from the

2  evidence. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).

3      The ALJ adverted to the opinion of consulting examiner Dr.

4  Gonzales but put little weight on his limitations of

5  lifting/carrying ten pounds, standing and walking two hours, and

6  only occasional bending and stooping because there were no

7  significant physical limitations in his examination, and it

8  appeared that Dr. Gonzales relied mostly on Plaintiff's

9  subjective complaints. (A.R. 25.) Substantial evidence supports

10 this conclusion because Dr. Gonzales noted that Plaintiff's

11 physical examination was essentially normal with respect to range

12 of motion; Plaintiff's systems were within normal limits; there

13 was mild tenderness in the knees, greater on the right; strength

14 in all areas tested was only slightly diminished at 4/5;

15 Plaintiff was able to move with a widened stance and short steps

16 without a single-point cane, but had some difficulty and/or pain

17 doing so. (A.R. 130-32.). It was within the appropriate scope of

18 the ALJ's determination to conclude that such severe limitations

19 based on only somewhat limited motor strength and Plaintiff's use

20 of a cane were not justified by significant physical limitations.

21 Greater weight will be given to opinions based on or supported by

22 relevant evidence, such as medical signs and laboratory findings.

23 20 C.F.R. § 404.1527(d)(3); 20 C.F.R. § 416.927(d)(3).

24      Likewise, the ALJ concluded that the doctor was relying on

25 Plaintiff's subjective complaints as distinct from discrete,

26 objective clinical findings. (A.R. 25.) Where the record supports

27 an ALJ's rejection of the claimant's credibility as to subjective

28 complaints, the ALJ is free to disregard a doctor's opinion that

1    was premised upon the claimant's subjective complaints.

2    <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).

3         Further, the ALJ considered the opinions of the state agency

4    medical consultants who concluded on October 14, 2001, and

5    January 28, 2002, that Plaintiff retained the RFC to lift and/or

6    carry fifty pounds occasionally and twenty-five pounds frequently

7    and stand, walk and sit six hours in an eight-hour workday with

8    no frequent forceful pushing and pulling of the lower left

9    extremity and with only occasional kneeling, crawling, and

10   climbing of ladders, ropes, and scaffolds. (A.R. 26, 141-48, 154-

11   63.) The ALJ expressly concluded that at the time the opinions

12   were rendered, they were consistent with the objective medical

13   evidence and were entitled to significant weight. (A.R. 26.)

14        The first state agency medical consultant, Dr. Lavanya

15   Bobba, explained that she considered the consultant's limits of

16   lifting ten pounds and standing and walking two hours to be

17   unsupported by the minimal findings; the range of motion tests

18   and well as motor strength tests were based on effort, and the

19   findings and x-rays did not support such restrictions; Dr. Bobba

20   believed that there was no medical indication for an assistive

21   device, and a medium RFC with limited kneeling was more

22   appropriate. (A.R. 148.)

23        The second state agency medical consultant also considered

24   the consultive examiner's limit to sedentary work but concluded

25   that the objective findings did not support the restriction; the

26   x-ray of the knee was within normal limits, and the use of the

27   case was not shown to be necessary for ambulation; hence lifting

28   and carrying were not as restricted as the consulting examiner

1 opined. (A.R. 160.)

2      The ALJ concluded:

3      The Administrative Law Judge finds that, reasonably
       considering the claimant's subjective complaints in light
4      of the minimal objective physical findings, at the
       time the opinions of the state agency medical consultants
5      were consistent with the objective medical evidence
       and were entitled to significant weight. However, new
6      evidence from consultative examiner Dr. Chang who
       concluded that the claimant could perform light work
7      is given greater weight. Therefore, I adopt Dr. Chang's
       limitations.
8
(A.R. 26.) The ALJ's reliance on the opinions of the state agency
9
physicians as of the time the opinions were rendered was based on
10
substantial evidence. The opinion of a nontreating, nonexamining
11
physician can amount to substantial evidence as long as it is
12
supported by other evidence in the record, such as the opinions
13
of other examining and consulting physicians, which are in turn
14
based on independent clinical findings. <u>Andrews v. Shalala</u>, 53
15
F.3d 1035, 1041 (9th Cir. 1995).
16
17      The ALJ considered and put great weight on the opinion of

consulting orthopedic examiner Dr. Chang, who examined Plaintiff
18
in September 2003. (A.R. 25, 232-35.) Dr. Chang considered
19
Plaintiff's multiple joint pain involving his shoulders, knees,
20
back, and neck. Plaintiff reported no physical therapy, surgery,
21
or injections. Dr. Chang recorded antalgic gait with difficulty
22
with walking on the toes and heels, reduced range of motion in
23
the cervical and lumbar spine with mild tenderness to percussion
24
over the posterior cervical paraspinal muscles, and reduced
25
motion in the shoulders and knees; straight leg raising was
26
negative to eighty degrees bilaterally without pain; there was
27
crepitus at bilateral knees with tenderness to palpation there
28

and at the shoulders; grip strength was 4/5 bilaterally,
bilateral shoulder muscle strength was 4+/5, elbows 4/5, and hip
and knee flexors and extensors were 5-/5; muscle bulk and tone
were normal and without atrophy, and sensation was normal. The
impression was multiple joint pains likely from osteoarthritis.
Dr. Chang opined that Plaintiff had the RFC to perform light work
(lift and carry twenty pounds occasionally and ten pounds
frequently, stand and walk six hours out of eight with normal
breaks), sit without restriction, with only occasional kneeling,
squatting, climbing stairs, handling, fingering, pushing and
pulling, and no repetitive bending and heavy lifting. (A.R. 235.)

The ALJ expressly put greater weight on this opinion because
it was new, or recent, and it reflected the developing status of
Plaintiff's condition. (A.R. 26.) The ALJ noted the consistent
evidence of worsening symptoms, including progress reports in
September and November 2001 reflecting increasing pain in the
right knee and leg, and imaging studies reflecting suspicion of
joint effusion and the presence of a cyst in the right head of
the humerous; he also noted reports in June 2002 of increased
arthritis in all extremities with worsening lower extremity
weakness for four months. (A.R. 25, 136-37, 151-52, 174-75.)
Substantial evidence in the form of records of Plaintiff's
treating sources supports the ALJ's conclusion that the
longitudinal medical record reflected worsening symptoms and
increasing restrictions around the pertinent time.

Thus, the ALJ properly assessed Plaintiff's RFC, which was
supported by substantial evidence. Plaintiff's RFC before October
14, 2001, was a medium RFC, and thus Plaintiff could perform his

past relevant work, which a vocational expert (VE), Ms. Chandler, had previously testified was medium, unskilled work which Plaintiff could perform with a medium RFC, but not with the light RFC which the ALJ assessed as of October 14, 2001. (A.R. 308-09.) The ALJ thus properly concluded that given Plaintiff's age, education, and work experience and his RFC after October 14, 2001, Plaintiff was then disabled pursuant to 20 C.F.R., Part 404, Subpt. P, App. 2, Rule 202.09.

Plaintiff complains of times when Plaintiff's diabetes was poorly controlled. However, later evidence from 2004 revealed that Plaintiff had been checking his blood sugar every other day and his diabetes was well controlled. (A.R. 263.) Plaintiff admitted at hearing that his doctor said that the blood monitoring revealed that Plaintiff's diabetes was getting better. (A.R. 303-04.)

VII. <u>Recommendation</u>

Pursuant to the foregoing analysis, it is concluded that Plaintiff's arguments should be rejected. The ALJ's decision was reached by the use of proper legal standards and is supported by substantial evidence.

Accordingly, it IS RECOMMENDED that

1. Plaintiff's social security complaint BE DENIED; and

2. Judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Seturnino Vargas, BE ENTERED.

This report and recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the

1  Local Rules of Practice for the United States District Court,

2  Eastern District of California. Within thirty (30) days after

3  being served with a copy, any party may file written objections

4  with the court and serve a copy on all parties. Such a document

5  should be captioned "Objections to Magistrate Judge's Findings

6  and Recommendations." Replies to the objections shall be served

7  and filed within ten (10) <u>court</u> days (plus three days if served

8  by mail) after service of the objections. The Court will then

9  review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

10 (b)(1)(C). The parties are advised that failure to file

11 objections within the specified time may waive the right to

12 appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d

13 1153 (9th Cir. 1991).

14 IT IS SO ORDERED.

15 **Dated:    February 5, 2008            /s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28